## STATUTORY RESTRICTIONS ON THE LOCATION OF A CEMETERY.

Common Pleas Court of Franklin County.

GEORGE L. FREY ET AL v. WILLIAM C. NOWLIN ET AL.

Decided, March 1, 1917.

*Cemeteries—Some of the Statutory Restrictions with Reference to, Construed—Ground Lying in Front of and to be Used as an Entrance to a Proposed Cemetery Forms Part of the Cemetery—Corporation for Profit Not Permitted to Maintain a Cemetery—Injunction Available to a Landowner Within the Prohibited Zone of a Cemetery.*

1. The restrictions found in the Ohio statutes render it impossible that a private corporation should engage in the business of platting, conducting and maintaining a cemetery for profit.
2. Land lying in front of and having the same ownership as a tract intended to be used for the burial of the dead constitutes a part of the proposed cemetery where necessary as an entrance way, notwithstanding there are to be no burials therein, but the said front part is to be reserved for park purposes and driveways.
3. Where the purpose to use the land for cemetery purposes is made clear by avowal or otherwise, a property owner residing within the prescribed limit may interfere by injunction, on the ground that the proposed use of the land would be in derogation of his legal rights.

*Donaldson & Tussing,* for plaintiff.
*Timothy S. Hogan,* contra.

KINKEAD, J.

This action and another by Eliza A. Woodruff et al against the same defendants, numbered 71279, were brought to enjoin the defendants from locating and establishing a cemetery.

Defendant William C. Nowlin has acquired more than 100 acres of land adjacent to plaintiffs' farms, on which it is proposed to establish a cemetery.

Frey complains that the cemetery is to be located about eighty-eight yards from his dwelling-house without his consent.

Woodruff and Cherry complain that defendants intend to locate the cemetery within forty-five yards from their dwelling-house without their consent.

The defendant, the Fairview Cemetry Company, is a private corporation organized under the laws authorizing the incorporation of a company for profit. It has an authorized capital stock, and the individuals named as defendants hold the stock. Defendant William C. Nowlin is the president. He admits in testimony that it is proposed that the corporation intends to engage in the business of conducting a cemetery for profit.

The corporation has not yet acquired the land. Defendant William C. Nowlin has purchased about 150 acres and now holds it individually. He admits, however, that it is his purpose to transfer eighty-seven acres to the corporation, to be used by it for burial purposes. The remaining portion of the land Nowlin states he intends to hold in his own name, and that it is to be converted into a park, to be used for park purposes, and for driveways furnishing entrances to the portion of the land to be held by the corporation for burial of the dead. It is to be used in connection with the eighty-seven acres to be held by the corporation. It is conceded and admitted that all the land now held by Nowlin, the eighty-seven acres proposed to be conveyed to the corporation to be used for burial purposes, as well as the remaining portion to be held by Nowlin, is all plotted for general improvement pursuant to the plan to construct and maintain a cemetery. New and extensive plans for draining the lands are contemplated. It is proposed to adopt one general scheme of draining all the lands as an entirety.

As disclosed by the last plan shown, eighty-seven acres is to be used for burials, while the remaining portion—the front part—is to be used for park purposes, with drives and entries to the eighty-seven acres which constitute one composite improvement in clear furtherance of the construction and maintenance of a cemetry by the direct and indirect use of all the land. The dwelling-house located on the portion adjacent to the public road is to be used for housing the keeper of the cemetery. An additional house is proposed to be built in that portion of

the property to be occupied by Nowlin, vice-president and general manager of the company.

It seems quite apparent that an evasion of the restrictions of the statutes concerning the amount of land which a cemetery association may hold is the purpose of the defendants. The legal questions presented are unique and important.

The question naturally arises whether a corporation organized for profit can engage in the business of conducting and maintaining a cemetery for the profit of its stockholders. The stock of the corporation may be bought and sold as may stocks of corporations generally. It is intended to have a sinking fund of ten per cent. of the selling price of the lots for perpetual maintenance, and the burial lots are to be sold with a view to profit for the stockholders. It is admitted to be a money-making scheme.

The corporation, Nowlin states, is practically non-existent as it stands today. But it is determined what Nowlin and the corporation intend to do. He states that he thinks he will reorganize the association under the statute; but he intends to hold the title to the front part of the property.

It is disclosed, therefore, that the front part of the property is to be used in conjunction with the eighty-seven acres which the corporation expects to use for burial purposes. The original plat shows this. It constitutes one general improvement. Though the front part of the property held by Nowlin is not to be used to bury the dead, as he now disclaims, it is nevertheless to be in general aid of and to carry out the purpose of maintaining a cemetery. Clearly this is an attempt to evade the purpose and intent of the statutes regulating cemetery associations.

May a corporation be authorized for profit for the purpose of engaging in the business of conducting a cemetery?

Decision of such a question should, under some circumstances, be made in a quo warranto proceeding. But its consideration, as well as of the corporate rights of the company, seems pertinent and relevant in determining the private right presented by the evidence in this case. It is said that the individuals and

the corporation are about to invade the rights of plaintiffs.

It is entirely clear that no land can be acquired or obtained nor appropriated for cemetery purposes within 200 yards of a dwelling-house without the consent, in writing, of the owner of the tract of land on which such dwelling-house is situated. Section 3678, General Code.

Nor can a cemetery be *located,* by either an association or incorporated company for cemetery purposes, within 200 yards of a dwelling-house unless the owner gives his consent. Section 10096, General Code.

The purposes of the statutes conferring this right upon owners of dwelling-houses so located, is to restrict any kind of an organization from invading this property right thus distinctly conferred upon owners of property. It is a direct recognition of the legal objections to such location of a cemetery.

Sections 3678, 3442, 10093, 10096 provide for certain restrictions and limitations upon legally constituted-corporations or organizations as to appropriating and acquiring land for cemetery purposes.

Sections 3441 to 3475, chapter six of the General Code, relating to cemeteries, are regulatory provisions concerning powers, duties and restrictions upon such organizations as well as of township trustees who are authorized to acquire and hold ten acres for cemetery purposes.

Chapter 6, ''Cemetery Associations,'' Sections 10093 to 10119, has to do with conferring powers and duties and imposing restrictions and limitations upon ''a company or association incorporated for cemetery purposes.''

These regulations and limitations are binding on any company, however organized, which undertakes to acquire lands for cemetery purposes.

The public character of the undertaking by any company or association organized or incorporated for cemetery purposes is clearly marked by the fact that the power of appropriation or of eminent domain is conferred upon it.

It is provided by Section 10095 that if it be necessary for any such company or association to acquire lands by appropria-

tion such proceedings shall be taken therefor as are provided for the appropriation of property to the use of corporations. Limitations are placed upon such appropriation not permitting lands to be taken upon which there is a dwelling-house, barn, stable or other farm buildings, etc.

All companies or corporations organized for cemetery purposes are prohibited from either acquiring by private contract or from appropriating more than 100 acres of land. Sections 10093, 10094.

Such corporations are not permitted to use their income as are ordinary private corporations. Nor are they permitted to incur debts except in the original purchase of the land, and in laying out, inclosing and embellishing the grounds and avenues, these being limited as provided by Section 10098. Lands thus acquired are forever committed to public burial purposes, being exempt from taxation, execution, attachment or lien. Burial lots sold by such companies or associations shall be sold for interments, *and in no wise with a view to profit.* Section 10101. The law does not contemplate that they shall be sold in "job lots" long in advance of intended use, with a primary purpose of profit (Section 10101), as Mr. Nowlin admits is his purpose.

Section 10109 provides that:

"No part of the proceeds of land sold, or of the funds of such company or association, shall ever be divided among its stockholders or lot owners. All its funds must be used exclusively for the purposes of the company or association, as herein above specified, or invested in a fund the income of which shall be so used and appropriated."

The manner of holding and investing the money is regulated by statutes (Sections 10118, 10119). Clearly this shows that lands can not be held and sold by a corporation for profit with a view to the profit of its stockholders.

Corporations may be organized for profit, and not for profit. According to Section 8623 of the code, a corporation may be formed for any purpose for which natural persons lawfully may associate themselves. Natural persons can not acquire, own and maintain a private cemetery for their profit. Restrictions pre-

scribed by Sections 10097, 10102, 10109, 10118 and 10119 clearly make it impossible to incorporate a private corporation for profit for the purpose of engaging in the business of laying out, conducting and maintaining a cemetery.

The admitted purpose of defendant Nowlin, who has acquired and now holds all the property, being to transfer 87 acres thereof to the corporation, and to hold the remainder to be improved, platted and used with the 87 acres for cemetery purposes, to be held and sold in burial lots for profit, it is clear that the 87 acres is intended to be committed to an unlawful use, a use which neither private individuals nor corporations can make of lands held and owned by them.

The court finds as a matter of fact that defendant Nowlin, in conjunction with the defendant corporation, in substance and effect, intends to commit all the lands now held by him to cemetery purposes in circumvention of law.

As an individual, Nowlin has no right to thus commit the front part of the property to cemetery purposes indirectly in cooperation with the corporation.

The evidence discloses that the nearest grave to be located in the eighty-seven acres devoted to burial purposes is more than 200 yards from the dwelling-house of either or any of plaintiffs.

The view taken by the court, however, is that defendants intended to use all of the lands now held by Nowlin for *cemetery purposes,* part directly and part indirectly in circumvention of the statutes.

The use of lands contained in one general plan of improvement for a cemetery, for any purpose in aid of or in furtherance of *cemetery purposes* as contemplated by Chapter 7, General Code, Section 10093, whether for the actual burial of dead, or in aid of such purpose in any portion of the premises, embraced within the general plan by driveways, parks and location of residences and working places, is in effect using such lands for cemetery purposes.

It being the avowed intent to thus use all of the lands now held by defendant Nowlin for cemetery purposes, even though there is no actual burial of dead within 200 yards of the dwell-

ing-houses of plaintiff, as now intended and claimed, still, looking to the substance and effect of the disclosed intent and purpose, to the plan of improvement, considering the apparent attempt to evade the law, and relying upon the general improvement disclosed by the plats in evidence, especially the first one prepared, the court is of the opinion that there is a threatened invasion of the rights given by statute to plaintiffs by defendants Nowlin and the Fairview Cemetery Company, that no land shall be obtained for public cemeteries within 200 yards of a dwelling-house without the consent of the owner, and that a cemetery shall not be located within 200 yards of a corporation.

The finding and judgment is in favor of plaintiffs in the two actions, it being ordered, adjudged and decreed by the court that defendant William C. Nowlin be perpetually enjoined from transferring any portion of the lands now held by him to the defendant, the Fairview Cemetery Company, to be used by it in conjunction with the portion which defendant Nowlin intends to hold in his own name, pursuant to the general plan and plat, in substance and effect as one tract of land for cemetery purposes contrary to the spirit and intent of the law, and in violation of the private statutory rights of plaintiffs without their written consent.

Nowlin and the corporation should not be permitted to indirectly and by circumvention in substance and effect locate a cemetery in contravention of the statutory rights of plaintiff.

It being apparent that a corporation for profit can not embark in the enterprise proposed, the parties should consider carefully their future. The court has carefully considered the question whether it could restrain an individual from deeding property to a corporation not authorized by law to receive it and use it for the purpose intended. But it is concluded that, as the direct purpose is to use all the lands for cemetery purposes, or to locate in substance and effect a cemetery upon all the lands, plaintiffs have the right to enjoin the act, even though the avowed intent be to locate the graves more than 200 yards from the dwelling-houses.

Assuming that the court is justified in treating the threatened and avowed purpose as above stated, it may be observed that

the right of plaintiffs to relief by injunction is placed upon the ground that the statutes thus conferring the right to object to such location of a cemetery constitutes a direct recognition of the fact that a cemetery so located is in derogation of legal right, if not a nuisance. It is a legal right conferred by statute. It has a tendency to injure the value of property and to impair health. *Henry* v. *Trustees,* 48 O. S., 671, 674. See *Norton* v. *Trustees,* 8 C. C., 335; *Payne* v. *Norton,* 54 O. S., 682.

If lands can not be appropriated upon which there is a dwelling-house, barn, stable, or other farm buildings (Section 10095), a private individual ought not to be permitted to secretly acquire such property as defendant Nowlin did in this case, and be permitted to actually in substance and effect commit it to cemetery purposes in conjunction with a company or corporation acquiring land upon which burial of dead is to be made, where the whole tract, as in this case, is to be generally improved according to one plan or plat as if an entire tract and owned by one company. The location of the cemetery on the eighty-seven acres would be impossible without acquirement of some of the land in the front part. This fact conclusively shows the unwarranted evasion of the statutes proposed.

The original plat shown in evidence divided all the lands held by Nowlin up into burial sections A, B, C, D, E, F, G, H, I, J, K, L, M, N, O, P, Q, R—18 in all. The residence in front is designated superintendent's residence. This discloses the intent to use it all for cemetery purposes. A later plat divides the front property into park sections.

It is clear that a permanent injunction should be allowed. An order may be drawn as above indicated.